IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-81001-TJM |
| | ) | A11-8056-TJM |
| TMS EQUIPMENT, LLC, | ) | |
| | ) | CH. 11 |
| Debtor(s). | ) | |
| TMS EQUIPMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VOLVO EQUIPMENT RENTS, INC., and | ) | |
| VFS US, LLC, d/b/a Volvo Financial | ) | |
| Services, f/ka Volvo Commercial | ) | |
| Finance, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Hearing was held in Omaha, Nebraska, on July 14, 2011, regarding Fil. #13, Amended Motion for Preliminary Injunction, Amended Application for Temporary Restraining Order, filed by the Plaintiff. Robert Craig and Anna Bednar appeared for the plaintiff; David Koukol appeared for Volvo Construction Equipment Rents, Inc.; and T. Randall Wright and John H. Rowland appeared for VFS US, LLC, d/b/a Volvo Financial Services, f/k/a Volvo Commercial Finance.

This matter comes before the Court on a request for a preliminary injunction. The order denying a temporary restraining order is at Fil. #24. That order provides the background facts which brought the parties to this litigation. The motion for preliminary injunction is denied and the case is dismissed.

As discussed in Fil. #24, the debtor was a franchisee for Volvo Construction Equipment Rents, Inc. ("Volvo Rents"). That franchise agreement was terminated prior to the bankruptcy petition being filed. The franchise agreement itself, and separate agreements signed by Walter Price, the principal of the debtor, contained provisions prohibiting the debtor and Mr. Price from competing in the sale or rental of construction equipment during and after the termination of the franchise agreement, for a period of two years. The two-year prohibition will last until January of 2012.

The debtor, Volvo Rents, and VFS, in order to settle a motion for use of cash collateral and motions for relief from the automatic stay, entered into an Agreed Order executed and effective on July 29, 2010. That Agreed Order provided for an orderly liquidation of the Volvo inventory which was collateral for VFS. It also provided that any rental arrangements that the debtor had entered into for equipment would be terminated by the end of 2010, with the equipment redelivered to the debtor and treated as inventory subject to the liquidation provisions of the Agreed Order.

Although there was a date certain by which the liquidation was to be completed, the Volvo parties acquiesced in the debtor continuing the liquidation after the end of 2010 and up to and

including early June of 2011. During that time, the parties attempted to negotiate terms which would provide for a release of guarantees of indebtedness executed by Mr. Price.

The negotiations were unsuccessful and in May of 2011, the debtor filed a plan and disclosure statement and shortly thereafter filed this adversary proceeding.

The debtor proposes, through the filed plan, to retain the remaining inventory, use it in an ongoing rental/sales of construction equipment operation, and use the cash collateral generated by the sales or rentals to operate the business and slowly pay off the debt to VFS. To support the plan, the debtor shows that the land and facilities formerly used by the debtor as a Volvo franchisee has been sold with the closing to take place on or about September 1, 2011. Mr. Price is a one-third owner of the entity that owns the facility and he estimates his share of the net proceeds of the sale will be approximately $450,000.00. He proposes to contribute those proceeds as additional capital for the debtor which he believes will be sufficient, along with the use of cash collateral, and a change in his operation from that of mainly a rental operation to the sale and rental of new and used equipment, to support the operation of the reorganized business going forward.

In order to implement the plan, it is necessary for the debtor to obtain an order from this court enjoining the Volvo entities from proceeding in federal or state court and from exercising their remedies under the franchise agreement, the covenants not to compete, the security agreements and the Agreed Order. To that end, the debtor has filed this adversary proceeding requesting such an injunction.

To obtain a preliminary or permanent injunction, the debtor must successfully convince the court that the balance of the following four factors favors the plaintiff-debtor: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm the relief would cause to the other litigants; and (4) the public interest. <u>Watkins, Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003).

At the trial, the debtor presented evidence, through the testimony of Mr. Price, that the Agreed Order, which all of the parties agree is basically a contract which could be modified by agreement of the parties, was modified by the parties. That evidence concerns the extension of the time allowed by VFS beyond the time frame contained in the Agreed Order for liquidation of the VFS collateral. Instead of completing the liquidation in 120 days, VFS permitted the continuing liquidation of its collateral and the use of its cash collateral from the end of July 2010 to the beginning of June 2011. During that time, according to the testimony, more than $700,000.00 in sales occurred and the sales and the turnover of significant proceeds from such sales to VFS benefitted VFS.

It is the position of the debtor that the modification of the time frame for liquidating collateral should be seen by the court as a waiver of other elements in the Agreed Order that are beneficial to VFS, such as the ability to obtain possession of the remaining inventory and liquidate it itself. It is additionally the position of the debtor that even if the court does not find that such waiver occurred, the court should exercise its discretion to enjoin enforcement of the Agreed Order because circumstances have changed since the entry of the order and failure to enjoin enforcement will be fatal to the debtor. The changed circumstances identified by the debtor, through Mr. Price, is the fact that hundreds of thousands of dollars have been paid to VFS from the sale of its collateral and from the fact that the debtor, through Mr. Price, now has access to approximately $450,000.00 to support its ongoing future operations.

Mr. Price testified that the Volvo franchise business model was flawed in that it relied totally on rentals of equipment. He further testified that even though the business as a franchise did not make a profit during its existence, it was anticipated from the very beginning, by both Volvo Rents and the debtor, that it would take several years to attain profitability, so failure to obtain profitability was not surprising. However, he firmly believes that a change in the business model, permitting the debtor to buy and sell used equipment and obtain new equipment from Volvo or other manufacturers, will result in a successful financial operation.

To support Mr. Price's opinion of the likelihood of success of a reorganized debtor, the debtor presented an expert witness with significant financial consulting experience. However, the expert witness admitted that he had never been involved in evaluating the potential success of a business in the industry of the debtor. Based upon his discussions with Mr. Price, he prepared and presented pro forma projections of revenue and expense. He admitted that he based his projections and his opinion as to feasibility on information he obtained from Mr. Price concerning industry practices. He did not make a direct comparison of the debtor's proposed business model or projections with any similar business with actual operations, either in the Omaha, Nebraska, area or any place else in the United States.

Volvo Rents did not enter into the Agreed Order. It did not have inventory subject to liquidation. Its interest in this litigation appears to be limited to its ability to enforce the terms of the franchise agreement.

In order for the debtor's plan to be successfully implemented, the debtor must be able to get out from under the requirements of the franchise agreement. In other words, unless Volvo Rents is enjoined from enforcing the terms of the franchise agreement, neither the debtor nor Mr. Price individually can be in the business of renting or selling construction equipment until the termination of the two-year limitation referred to above. To support its position that Volvo Rents should be enjoined from enforcing the terms of the franchise agreement, the debtor presented an opinion from the trial court in New York state which found that the terms of the covenant not to compete were over-broad as they applied to employees of a former Volvo franchise in a similar position as Mr. Price, and therefore were unenforceable. That case does not, however, deal with the covenants not to compete contained in the franchise agreement itself. That agreement provides that any disputes concerning it shall be referred to arbitration and the law that is to be applied by the arbitrator is the law of the state of North Carolina. The debtor has presented no factual or legal basis for the court to ignore the arbitration clause. In arbitration, just as in litigation, the arbitrator can determine whether the terms of a covenant not to compete in a franchise agreement are enforceable against the former franchisee.

In Fil. #24, the order denying the temporary restraining order, the court advised that the debtor had the burden of showing it has interim financing separate from cash collateral. In addition, the debtor was to present evidence that it has a facility to operate the business since the contract for the sale of the facility appears to require the debtor to leave the premises by a date certain.

To meet those two requirements, the debtor, through Mr. Price, testified that the purchaser of the facility had agreed to allow the debtor to leave its equipment on the premises for a period of time, and that Mr. Price had been looking at a number of different locations to rent for the continuing operation. He presented no testimony concerning the actual location that he was interested in, presented no evidence that he has any form of written agreement with any entity concerning movement of the business to another location, and presented no evidence that he has interim

financing to even enable him to pay rent at another location. He does not have the proposed $450,000.00 from the sale of the facility and apparently will not have it until at least September 1, 2011. He also presented no testimony with regard to his personal financial situation. Therefore, the court is unable to determine whether the $450,000.00 he anticipates being able to contribute to the debtor will actually be available to him, considering that he has a personal guarantee of the VFS debt which right now far exceeds $450,000.00.

There is no argument by any party that a failure to enjoin the Volvo entities from exercising their rights and remedies will irreparably harm the debtor. The debtor simply will go out of business and its employees will be without jobs. With regard to that prong of the law concerning the likelihood of success on the merits, it was the debtor's burden to present evidence that it had the financial capability to reorganize. It attempted to meet that burden by explaining a change in the business model and by presenting expert testimony concerning projections. That evidence is insufficient to convince this judge. The projections presented by the expert witness make little sense. They assume significant changes in rental income from that which has been experienced by the debtor both during the term of the franchise agreement and since its termination. There was no evidence presented concerning how the debtor will market the new business to enable it to so successfully turn around within a short period of time. There is no evidence that the debtor has the ability to obtain sufficient financing, in addition to whatever amount may be contributed by Mr. Price, to continue the operation of the business without the use of the inventory and the proceeds of the inventory which are subject to the VFS security interest. Balancing the harm to the debtor if the Agreed Order is modified by injunction against the harm caused to the Volvo entities, the balance favors the Volvo entities. The fact that VFS acquiesced in continuing sales of its collateral, thereby partially modifying the liquidation terms of the Agreed Order, does not amount to a waiver or consensual modification of the other terms of the Agreed Order.

The fact that Volvo Rents negotiated with Mr. Price concerning the possibility of leasing the facility for a price in excess of the amount the debtor was supposed to be paying as rent is not evidence of bad faith on the part of Volvo Rents. There is nothing in the Agreed Order that says Volvo Rents is prohibited from attempting to get Mr. Price to discuss with the other parties to the ownership of the facility a potential rental agreement. There is nothing in the Agreed Order which precludes Volvo Rents from negotiating for such lease as a condition for releasing Mr. Price from his guarantee obligations to VFS, a related entity.

The harm for the Volvo entities, if enjoined, includes the inability of Volvo Rents to keep Mr. Price and the debtor from directly competing in the same location for at least a period of time against Volvo. Volvo Rents contracted with Mr. Price and the debtor for such non-competition for a limited period of time after termination of the franchise. If the debtor is allowed to keep the Volvo equipment, rent the Volvo equipment and/or sell the Volvo equipment, it will be directly competing with Volvo Rents to the significant financial detriment of Volvo Rents. If the debtor is successful in enjoining VFS from enforcing its rights under its security documents and the Agreed Order, VFS will be put in an adverse financial position. It will not be permitted to take possession of its collateral and control its liquidation. It will be totally dependent upon the debtor to act in good faith with regard to the sale or rental of the collateral at the same time the debtor is planning to purchase equipment for sale and rental from other manufacturers.

Concerning the public interest, it is important that parties participating in the negotiations in court feel comfortable that it is safe to enter into negotiations to settle contested matters and that the terms of the settlement will be honored by the other parties and by the court, even if some

changes occur after the settlement agreement is entered into. Here, the only change represented in the evidence is the fact that the facility has been sold and Mr. Price may obtain approximately $450,000.00 to restart the business. Without evidence of additional operational financing and a real facility to enable the debtor to have sales, rental and service available to the public, such a monetary change is not sufficient to enable the court to ignore the public interest in honoring negotiated agreements.

For all of the above reasons, the request for a preliminary injunction is denied and this adversary proceeding is dismissed.

IT IS ORDERED that Fil. #13, Amended Motion for Preliminary Injunction, Amended Application for Temporary Restraining Order, is denied and this adversary proceeding is dismissed.

DATED:    August 2, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *Robert F. Craig
    *Anna Bednar
    David Koukol
    T. Randall Wright
    John H. Rowland

Movant (*) is responsible for giving notice to other parties if required by rule or statute.